IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**NANCY MACIAS,**            CASE NO. 3:20 CV 636

    Plaintiff,

    v.            JUDGE JAMES R. KNEPP II

**CITY OF TOLEDO,**

    Defendant.            MEMORANDUM OPINION AND ORDER

### INTRODUCTION

This case arises out of Plaintiff Nancy Macias's claim that her current employer, Defendant City of Toledo ("the City"), committed national origin and gender discrimination and retaliation against her in violation of Title VII of the Civil Rights Act of 1964 and Ohio Revised Code § 4112.02. The matter now before the Court is Defendant's Motion for Summary Judgment (Doc. 21). Plaintiff opposed (Doc. 26), and Defendant replied (Doc. 28).

For the reasons set forth below, Defendant's Motion (Doc. 21) is granted.

### BACKGROUND

Viewing the facts in the light most favorable to Plaintiff, the background of this case is as follows:

Parties Involved

Plaintiff, a woman of Hispanic national origin (Plaintiff Depo., at 28-29)[1], is a field technician working for Defendant City of Toledo, Division of Water Distribution. *Id.* at 5-6. As a field technician, Plaintiff maintains meters, looks at curb boxes, performs turn-ons and turn-offs, provides customer service in-house, and conducts inspections. *Id.* at 6. Plaintiff has held this

---
1. Plaintiff's deposition is located at ECF Doc. 20.

position for four or five years, and the events underlying this action arise out of allegations of discrimination and retaliation while in the role. *See generally* Doc. 1; Plaintiff Depo., at 6.

History of Harassment and Discrimination

Plaintiff began working for the City as an employee in its Division of Streets, Bridges, and Harbor in 2013 and testified she was subjected to a pattern of harassment and discrimination at the hands of Defendant's employees dating back to 2014. (Plaintiff Depo., at 25). Plaintiff recalls specific incidents of harassment such as her former supervisor's nephew (also an employee of the City) striking her with a sweeper. *Id.* at 7. Plaintiff reported the act of violence the following day, but her supervisor said the complaint was not timely and disregarded it without further action. *Id.* Plaintiff testified that following her complaint she was subjected to retaliation by way of a denied promotion, and in 2015 she sent emails to the Mayor describing City employees discouraging her from seeking promotion as a result of her complaints. (Doc. 26-1, at ¶ 18); (Doc. 26-3, at 14). Plaintiff also reports instances of discrimination such as denial of the opportunity to seek promotion to a general foreman position. (Doc. 26-2, at 15-22). Plaintiff filed a complaint with the Ohio Civil Rights Commission stating she was improperly left off the eligibility list for the promotion. (Doc. 26-3, at 28).

After Plaintiff filed a grievance in 2017, three City employees called Plaintiff into a closed-door office and questioned her without a supervisor present; one employee stood on a table and yelled at her about the grievance with his groin near her face. (Doc. 26-2, at 23, 27). Shortly thereafter in 2017, Plaintiff attempted to break up an argument between two City employees, and one told her to "go back to her country". (Plaintiff Depo., at 29); (Doc. 26-2, at 27). Plaintiff reported these employees to the Department of Diversity and Inclusion ("D&I"), but no disciplinary action was taken, and D&I failed to file the grievance through formal

channels as Plaintiff requested. (Doc. 26-2, at 27). After these repeated complaints, Plaintiff moved from the City's Division of Streets, Bridges, and Harbor to her current position in the Division of Water Distribution in February of 2018. (Doc. 21-1, at ¶ 2). Plaintiff testified the move resulted in a temporary pay reduction due to her being placed on a probationary period. (Plaintiff Depo., at 33). Conversely, City employee Kayla Frasco, an Administrative Analyst III, avers Plaintiff received a promotion and pay increase. (Doc. 21-1, at ¶ 4).

2018 Incidents

Plaintiff points to two separate instances of allegedly unfair treatment while in her current position at the Division of Water Distribution. (Doc. 1, at ¶¶ 6, 11, 16, 21, 26). First, on September 14, 2018, she received a one-page counseling letter for failure to perform job duties for not filling out work orders, log sheets, and performing water service turn-offs. (Plaintiff Depo., at 9-10). Plaintiff does not deny the truth of the letter. *Id*. at 10. Instead, Plaintiff states she made the same mistakes as "everyone else" but only she was given a counseling letter. *Id.* at 11. Plaintiff also complains her manager unfairly assigned her a disproportionately large share of water turn-offs when her locator malfunctioned. *Id.* at 12-13. Because of the malfunctioning locator, Plaintiff could not perform water turn-offs correctly and faced discipline as a result. *Id.* She notes all employees have some bad days, but others performed their duties far worse than her, with working locators, yet faced no disciplinary charges. *Id.* at 14. Plaintiff testified the counseling letter had no impact on her pay or seniority but caused her distress. *Id.* at 15.

Second, on November 1, 2018, Defendant issued a written warning to Plaintiff after a customer's complaint of unprofessional conduct. *Id.* at 16. The customer accused Plaintiff of failing to clean up water spilled on the floor that leaked from an improperly shut water valve; the customer had to use her own towels to clean up. *Id.* at 18-19. The customer also complained

3

Plaintiff used profanity (which Plaintiff denies) and that Plaintiff tracked water through the house wearing wet boots (which Plaintiff testified was possibly true). *Id.* at 18-21. Plaintiff was reprimanded and placed on Step-1 progressive discipline. *Id.* at 17.

## STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* Further, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *See* Fed R. Civ. P. 56(c)(3) (noting the court "need consider only the cited materials").

## DISCUSSION

Plaintiff alleges Defendant discriminated against her based on her national origin and gender in violation of Title VII of the Civil Rights Act of 1964 and Ohio Revised Code § 4112.02. She further alleges Defendant unlawfully retaliated against her for engaging in

4

protected activities. For the reasons discussed below, the Court finds Defendant is entitled to summary judgment.

Discrimination

In Counts One through Four of her Complaint, Plaintiff brings claims of national origin and gender discrimination under both Title VII of the Civil Rights Act of 1964 and Ohio Revised Code 4112, *et seq*.

"Title VII of the Civil Rights Act of 1964 makes it 'an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting 42 U.S.C. § 2000e–2(a)(1)). Title VII prohibits employers from treating employees differently according to their national origin or sex. *See* 42 U.S.C. § 2000e-2(a)(1). When a plaintiff does not put forth direct evidence of discrimination, this Court applies the burden-shifting analysis established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and later modified by *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). This framework places the initial burden on Plaintiff to establish her prima facie case. *Burdine*, 450 U.S. at 252-53 (citing *McDonnell Douglas*, 411 U.S. at 802). To satisfy this burden, the plaintiff must show "(1) [she] was a member of a protected class; (2) [she] suffered an adverse employment action; (3) [she] was qualified for the position; and (4) [she] was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706 (6th Cir. 2006) (internal citations and quotations omitted). If the plaintiff can establish a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the action. *Burdine*, 450 U.S. at 252-53 (citing

5

*McDonnell Douglas*, 411 U.S. at 802). If the defendant articulates such a reason, the burden shifts back to the plaintiff to demonstrate the proffered reason was a mere pretext for discrimination. *Id.* at 253. "[F]ederal case law governing Title VII actions is generally applicable to cases involving alleged violations of Chapter 4112." *Id.* (citing *Williams v. Ford Motor Co.*, 187 F.3d 533, 538 (6th Cir. 1999)). Thus, all of Plaintiff's discrimination claims are properly analyzed under the Title VII framework.

Because the parties agree there is no direct evidence of discrimination, this case must be analyzed under the burden-shifting analysis. (Doc. 26, at 7); (Doc. 21, at 5).

*Prima Facie Case*

Defendant contends it is entitled to summary judgment because Plaintiff has no evidence to create a genuine issue of material fact regarding the second and fourth prongs of her *prima facie* case. (Doc. 21, at 5). Specifically, Defendant asserts Plaintiff cannot show she suffered an adverse employment action or that she was treated differently than similarly situated employees outside the protected class. *Id.*

*Adverse Employment Action*

In opposition to summary judgment, Plaintiff identifies two employment actions she asserts are adverse. First, Plaintiff states the February 2018 "promotion" from Streets, Harbors and Bridges was materially adverse because it resulted in lower pay. (Doc. 26, at 9). She argues the continued harassment while at Streets, Harbors and Bridges brought about her eventual transfer and pay reduction. *Id.* at 8. Second, Plaintiff argues the September and November 2018 disciplinary actions are adverse actions. *Id.* at 10.

In *White v. Baxter Healthcare Corp.*, the Sixth District held "[a]n adverse employment action is an action by the employer that 'constitutes a significant change in employment status,

6

such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" 533 F.3d 381, 402 (6th Cir. 2008) (quoting *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998)). "In general, 'a negative performance evaluation does not constitute an adverse employment action unless the evaluation has an adverse impact on an employee's wages or salary.'" *Id.* (quoting *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 322 (6th Cir. 2007)).

### Pay Reduction

Loss of income has long been recognized as an adverse employment action. *Cf., McKethan-Jones v. Ohio Dep't of Health*, 7 F. App'x 475, 479 (6th Cir. 2001) ("Jones's five-day suspension, without pay, clearly amounts to an adverse employment action"). Defendant characterizes Plaintiff's transfer to the Division of Water as a promotion with a pay increase. (Doc. 21, at 5-6). However, Plaintiff expressly testified "[she] lost money" as a result of the transfer. (Plaintiff Depo., at 33). "Under [Sixth Circuit] precedent, the deprivation of increased compensation which results when an employee receives a lower salary increase because of a negative evaluation constitutes an adverse employment action." *Sanford v. Main St. Baptist Church Manor, Inc.*, 327 F. App'x 587, 603 (6th Cir. 2009) (citing *White*, 533 F.3d at 404). "Moreover, even if the deprivation is subsequently cured, the temporary deprivation could still be an adverse employment action." *Id.* (citing *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 803 (6th Cir. 2004) (employee's thirty-seven-day suspension without pay, followed by reinstatement with back pay, constituted adverse employment action)).

Although a reduction in pay may be sufficient to establish an adverse action in some circumstances, here the reduction in pay is not related to the events underlying the Complaint: the September and November 2018 reprimand and probation. *See* Doc. 1, at ¶¶ 6, 11, 16, 21, 26.

7

In its reply, the City argues that most of Plaintiff's opposition brief is dedicated to events unrelated to the specifically identified 2018 disciplines, and further, that the unrelated factual allegations cannot be used to overcome summary judgment. (Doc. 28, at 4). This Court agrees. "[A] plaintiff may not expand his claims to assert new theories for the first time in response to a summary judgment motion." *Sandlin v. Citibank, N.A.*, 2018 U.S. App. LEXIS 32885, *7 (6th Cir. 2018) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting that federal pleading standards entitle a defendant to fair notice of the plaintiff's claims and the grounds upon which they rest)).

Although Plaintiff brought claims of discrimination and retaliation, those claims only specifically identified the events of September and November 2018. *See* Doc. 1, at ¶¶ 6, 11, 16, 21, 26; *Sandlin*, 2018 U.S. App. LEXIS 32885, *7 ("Although Sandlin alleged breach of contract claims in his amended complaint, they concerned his allegations that the defendants misapplied his monthly payments and collected amounts not due under the loan. He did not include his current claims"). Plaintiff's reliance on reduced pay during a period preceding the specifically alleged events is insufficient to establish an adverse action for purposes of overcoming summary judgment. *Hubbard v. Select Portfolio Servicing, Inc.*, 2017 U.S. Dist. LEXIS 139533, *8 (E.D. Mich. 2017) ("[Plaintiff] cannot amend his complaint, which is the operative pleading in this matter, by simply including new factual allegations in his briefing in opposition to the motions for summary judgment."). Indeed, "[a]t the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Rule 15(a)." *Tucker v. Union of Needletrades, Indus., & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005).

Because the transfer and related reduction of pay were raised for the first time in opposition to summary judgment, they cannot establish an adverse action for purposes of the case at bar.

### Counseling Letter / Probation

With respect to the September 2018 reprimand and November 2018 probation, Sixth Circuit precedent is clear that neither is an adverse employment action in this circumstance. *Creggett v. Jefferson Cnty. Bd. of Educ.*, 491 F. App'x 561, 566 (6th Cir. 2012) ("A written reprimand, without evidence that it led to a materially adverse consequence such as lowered pay, demotion, suspension, or the like, is not a materially adverse employment action."). Plaintiff has not provided any evidence showing an adverse employment action resulted from either the reprimand or Step-1 probationary period. Conversely, Defendant has produced evidence showing neither subjected Plaintiff to changes in her position, benefits, job title, or pay. (Doc. 21-1, at ¶ 6). As such, the reprimand and probation are not adverse employment actions under the Sixth Circuit's framework.

### *Similarly Situated Employees*

Even if Plaintiff could show a materially adverse action, her discrimination claim would still fail because she did not satisfy the similarly-situated prong. To do so, the Sixth Circuit historically required plaintiffs to point to "comparable[ ]" employees who are "similarly-situated *in all respects*", meaning individuals who "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (emphasis added). The Sixth Circuit has since clarified that "[a] court's formulation of the similarly-situated inquiry

should not be exceedingly narrow", and individuals are considered similarly situated "if they are similar (though not identical) in *all relevant respects*." *Lynch v. ITT Educ. Servs., Inc.*, 571 F. App'x 440, 444 (6th Cir. 2014) (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998)) (emphasis added). Thus, "the appropriate test is to look at [the *Mitchell*] factors relevant to the factual context, as opposed to a requirement that a plaintiff demonstrate similarity in all respects." *Jackson v. FedEx Corp. Servs.*, 518 F.3d 388, 396 (6th Cir. 1998) (internal citations omitted).

Plaintiff attempts to satisfy this prong by pointing to Myron Middlebrooks and Mike Miller. (Doc. 20, at 22). She testified Middlebrooks and Miller were also City of Toledo employees and the subjects of a customer complaint that came over the radio. *Id.* Plaintiff argues Middlebrooks and Miller received no punishment for the complaint, while she was put on Step-1 probation for similar conduct. (Doc. 26, at 4). Plaintiff has failed to meet her burden on this prong for the following reasons.

First, Plaintiff has not offered any evidence establishing Middlebrooks and Miller were similarly situated in all relevant respects as to punishment for a customer complaint. There is no evidence they dealt with the same supervisor or disciplinary committee as Plaintiff. There is no evidence showing Middlebrooks and Miller "engaged in the same conduct [as Plaintiff] without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell*, 964 F.2d at 583. Because Plaintiff bears the burden of pointing to employees who are similarly-situated in all relevant aspects, and Plaintiff has not done so here, she has failed to establish a *prima facie* case. *See Mitchell*, 964 F.2d at, 582

Second, assuming only for the sake of argument that loss of pay is properly before this Court as an adverse action, comparison to Middlebrooks and Miller is still unavailing because

Plaintiff does so in the context of customer complaints, not in the context of loss of pay. Above, this Court found that the September and November 2018 disciplinary actions were not adverse employment actions. *Creggett*, 491 F. App'x at 566. Thus, comparison to Middlebrooks and Miller is insufficient to overcome summary judgment even if this Court found her reduction in pay was contemplated by the Complaint – which it does not.

Because Plaintiff is unable to show a similarly situated non-protected employee engaged in the same conduct in all relevant respects and was treated more favorably, she has not met her burden on the fourth prong of her *prima facie* case, and Defendant is in turn entitled to summary judgment on Plaintiff's discrimination claims (Counts One through Four).

Retaliation

Plaintiff alleges retaliation in violation of Title VII in Count Five of her Complaint. (Doc. 1, at 7). Plaintiff asserts she engaged in protected activities centered around complaints of discrimination and unfair treatment based on her gender and national origin. *Id.*

"To make a *prima facie* showing of Title VII retaliation, an employee must show '(1) [she] . . . engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action.'" *Laughlin v. City of Cleveland*, 633 F. App'x 312, 315 (6th Cir. 2015) (quoting *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008)). "If the employee makes this showing, the burden shifts to the employer to articulate a 'legitimate, nondiscriminatory reason for its actions.'" *Id.* (quoting *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 544 (6th Cir. 2008)). "If the employer meets this burden, the employee must demonstrate that the legitimate reason offered by the employer 'was a pretext designed to mask retaliation.'" *Id.*

11

Defendant concedes Plaintiff satisfies the first two prongs of her *prima facie* case for retaliation: she filed a charge against the City on the basis of national origin and gender discrimination and Defendant knew she participated in the activity. (Doc. 21, at 10). Defendant bases its summary judgment motion entirely on the adverse action prong, arguing: "Plaintiff was not subjected to any adverse employment action . . . She was not terminated or demoted, neither did she suffer any loss of pay or job standing." *Id.* Because, as this Court determined above, Plaintiff has not established a genuine issue of material fact regarding a materially adverse action, she has not satisfied a *prima facie* case of retaliation. As such, Defendant is entitled to judgment in its favor.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendant's Motion for Summary Judgment (Doc. 21) be, and the same hereby is, GRANTED.

  s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE